UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN DOE                                      CIVIL ACTION

VERSUS                                        NO: 15-1283

HONORABLE BOBBY JINDAL, ET AL.                SECTION: R(2)

## ORDER AND REASONS

The "state defendants"[1] and defendant Michael Harrison move the Court to dismiss plaintiff's civil rights complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).[2] For the following reasons, the Court grants the motions and dismisses Doe's claims with prejudice.

---

[1]     The "state defendants" are Governor Bobby Jindal, Louisiana Attorney General James D. "Buddy" Caldwell, James "Jimmy" LeBlanc, Colonel Michael D. Edmonson, Lieutenant Colonel Adam White, Major Leland Falcon, Captain Stacey Barrett, and Lieutenant Christopher Eskew.

[2]     R. Doc. 11; R. Doc. 18.

# I.   BACKGROUND

## A.   Parties

Pseudonymous plaintiff "John Doe"[3] is a recent resident of New Orleans, Louisiana, and a registered sex offender.  Doe was convicted and sentenced in Alabama state court for Transmitting Obscene Material to a Minor by Computer.  Doe now challenges as unconstitutional part of Louisiana's sex offender registry laws on substantive due process and equal protection grounds.

Doe sues the following nine defendants, all in their official capacities.  Defendant Governor Bobby Jindal is Chief Executive of the State of Louisiana, who is bound by the Louisiana Constitution to see that state laws are faithfully executed.  According to Doe, Governor Jindal also appoints the heads of each department of Louisiana's executive branch, including the Secretary of the Department of Public Safety and Corrections.[4]

Defendant Buddy Caldwell is the Attorney General of the State of Louisiana.  According to Doe, as attorney general, Caldwell has final authority regarding criminal justice policy in Louisiana, which includes administering,

---

[3]     The parties quarrel over whether Doe is required to use his own name, rather than a pseudonym, to state a claim as a matter of law under Federal Rule of Civil Procedure 10(a).  Because the Court dismisses Doe's claims on other grounds, it is unnecessary to address the parties' arguments on this point.

[4]     R. Doc. 1 at 3 ¶ 5.

maintaining, and enforcing Louisiana's registry laws and the State Sex Offender and Child Predator Registry.[5]

Defendant James "Jimmy" LeBlanc is the Secretary of the Louisiana Department of Public Safety and Corrections.  According to Doe, the Department obtains the information necessary to maintain the State Sex Offender and Child Predatory Registry.  As Secretary of the Department, LeBlanc oversees all department programs, formulates rules and regulations within the department, and determines department policy regarding operations.[6]

Defendant Michael D. Edmonson is the Deputy Secretary of the Department, who is in charge of Public Safety Services, and the Superintendent of the Louisiana State Police.  According to Doe, in these positions, Edmonson maintains ultimate authority over the State Police's policies and practices, including how sex offender information is maintained and disseminated within the State Sex Offender and Child Predator Registry.[7]

Defendant Adam White is the Deputy Superintendent of the Louisiana State Police, who is in charge of Support Services.  Support Services oversees the policies and practices of Louisiana's Bureau of Identification and

---

[5]   *Id.* at 4 ¶ 6.

[6]   *Id.* at ¶ 7.

[7]   *Id.* at 5 ¶ 8.

Information, which maintains sex offender information and releases that information to the public.[8]

Defendant Leland Falcon heads Technical Support Services, a branch of Louisiana State Police Support Services.[9] Defendant Stacey Barrett heads the Bureau of Identification and Information, which falls under Louisiana State Police Technical Support Services.[10] Defendant Christopher Eskew is the Deputy Director of the State Sex Offender and Child Predator Registry.[11]

Defendant Michael Harrison is the Superintendent of the New Orleans Police Department. According to Doe, as NOPD Superintendent, Harrison maintains and administers the State Sex Offender and Child Predator Registry in Orleans Parish. Harrison's duties include collecting information from sex offenders living in Orleans Parish and disseminating that information to the public.[12]

## B. Factual Background

### 1. *Doe's Alabama Conviction and Louisiana Sex Offender Registration Requirements*

---

[8]    *Id.* at ¶ 9.

[9]    *Id.* at ¶ 10.

[10]   *Id.* at ¶ 11.

[11]   *Id.* at 6 ¶ 12.

[12]   *Id.* at ¶ 13.

On April 30, 2012, Doe pled guilty in Alabama state court to Transmitting Obscene Material to a Minor by Computer, an Alabama sex offense. As part of Doe's sentence, the Alabama court ordered Doe to register himself as a sex offender for the rest of his life. According to Doe, the Alabama court did not determine that Doe was dangerous or otherwise needed to register for life because of some personal characteristic or disposition. Rather, Alabama law mandates that every sex offender required to register must do so for life.[13]

Doe now lives in Louisiana. According to Doe, when he transferred his sex offender registration to Louisiana, the State, through the Louisiana Bureau of Criminal Identification and Information, determined that because the Alabama court sentenced Doe to lifetime sex offender registration, Doe must register himself on Louisiana's State Sex Offender and Child Predatory Registry for the rest of his life as well. In addition, the Bureau determined that Doe must periodically renew his sex offender registration in person with the New Orleans Police Department every three months. The Bureau also rested this determination on the Alabama court's imposing lifetime registration as part of Doe's sentence.[14]

---

[13]     *Id.* at 7 ¶ 19.

[14]     *Id.* at 6 ¶ 16.

On April 14, 2015, Doe filed this 42 U.S.C. § 1983 civil rights lawsuit seeking declaratory and injunctive relief from defendants. Doe alleges that the portions of Louisiana's sex offender registry laws on which the Bureau relied in making its duration of registration and frequency of in-person renewal determinations are unconstitutional.[15]

### 2. *Louisiana's Sex Offender Registry Laws*

Louisiana maintains a comprehensive statutory scheme governing sex offender registry within the state. *See* La. Rev. Stat. § 15:540, *et seq.* ("Chapter 3-B. Registration of Sex Offenders, Sexually Violent Predators, and Child Predators). Doe challenges only two subsections within that overall scheme—Louisiana Revised Statute § 15:544(C) and § 15:542.1.3(B)(2)(c).

Louisiana Revised Statute § 15:544 is the general provision addressing the duration of an offender's registration requirement. Subsection 544(C) provides, "[a] person who is required to register pursuant to the provisions of R.S. 15:542.1.3 shall register and maintain his registration . . . for the period of registration provided by the jurisdiction of conviction or for the period of registration provided by the provisions of this Section, *whichever period is longer*." La. Rev. Stat. § 15:544(C) (emphasis added). Revised Statute § 15:542.1.3 states that "[a]ny person who is convicted or adjudicated of an offense under the laws of another state, or military, territorial, foreign, tribal,

---

[15]     *Id.* at 6-8.

or federal law [that] requires registration shall be subject to and shall comply with all of the registration requirements of this Chapter . . . ."  La. Rev. Stat. § 15:542.1.3(A).  Thus, under § 15:544(C), if a person is convicted of a sex offense in a state other than Louisiana, and that state's period of registration for the offense is longer than the registration period that Louisiana law would require, Louisiana applies the registration period required by the offender's state of conviction.  *See* La. Rev. Stat. § 15:544.

Revised Statute § 15:542.1.3 also establishes how an offender's out-of-state conviction affects Louisiana's requirement that sex offenders residing here periodically renew their sex offender registration in person with the appropriate law enforcement agencies.  According to subsection 542.1.3(A), once an offender establishes a residence in Louisiana, he must provide the Louisiana Bureau of Criminal Identification and Information certain information pertaining to his offense of conviction.  The Bureau then determines the offender's period of registration and the frequency of his in-person periodic renewals by analogizing the offender's out-of-state offense of conviction to the "most comparable Louisiana offense."  La. Rev. Stat. § 15:542.1.3(B)(2)(a).  But when the offender's jurisdiction of conviction requires lifetime registration, the statute provides as follows:

> If the period of registration required by the offender's jurisdiction of conviction is for the duration of the offender's lifetime, the bureau shall not be required to determine which time period of

7

> registration and the frequency of in-person periodic renewals that would be applicable to the offender while residing in Louisiana . . . . The duration of the registration for any such offender shall be for the duration of his lifetime pursuant to R.S. 15:544, and the frequency of in-person periodic renewals for the offender shall be every three months from the date of initial registration . . . .

La. Rev. Stat. § 15:542.1.3(B)(2)(c).

In other words, if the offender's jurisdiction of conviction imposed a lifetime registration requirement, the Bureau will not undertake the "most comparable Louisiana offense" analysis.  Instead, Louisiana will also impose upon the offender a lifetime registration requirement and require him to periodically renew his registration in person every three months.  *See id.*

Doe alleges that the special provisions in sections 15:544(C) and 15:542.1.3(B)(2)(c) for offenders sentenced to lifetime registration by out-of-state courts violate principles of substantive due process, as well as the Equal Protection Clause of the Fourteenth Amendment by treating similarly situated sex offenders differently depending on their state of conviction.[16]  Doe also alleges that treating out-of-state offenders differently implicates the fundamental right to travel, triggering strict scrutiny of Louisiana's registry provisions.[17]

## C.    Defendants' Motions to Dismiss

---

[16]     *Id.* at 3, 8.

[17]     *Id.* at 7 ¶ 22.

The "state defendants"–everyone but New Orleans Police Department Superintendent Michael Harrison–move to dismiss Doe's complaint on two grounds.  First, as to the claims against Governor Bobby Jindal, the state defendants argue that the Court lacks subject matter jurisdiction because Eleventh Amendment immunity bars Doe's official-capacity claims against the Governor.[18] Second, as to Doe's remaining claims, the state defendants argue that Doe fails to state a claim upon which relief can be granted because the challenged portions of Louisiana's sex offender registry laws are constitutional.[19]

Defendant Michael Harrison also moves to dismiss Doe's complaint. Harrison argues not only that the challenged statutes are constitutional, but also that Doe fails to allege that Harrison's conduct violated Doe's constitutional rights.[20]

## II.   LEGAL STANDARD

### A.   Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the

---

[18]   R. Doc. 11-1 at 5.

[19]   *Id.* at 10.

[20]   R. Doc. 18-1 at 5-6.

statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). In ruling on a Rule 12(b)(1) motion to dismiss, the Court may rely on (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Den Norske Stats Ojeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

When, as here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule 12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). A court's dismissal for lack of subject matter jurisdiction is not a decision on the merits and does not prevent the plaintiff from pursuing the claim in another forum. *See id.* Because defendants argue that the Court lacks subject matter jurisdiction over Doe's claims against Governor Jindal only, the Court must nonetheless address whether Doe states a claim as to the other defendants.

10

### B.     Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true.  *Iqbal*, 556 U.S. at 678.  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.  *Lormand*, 565 F.3d at 257.  If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed.  *Twombly*, 550 U.S. at 555.

## III.  DISCUSSION

### A.  The Court Lacks Subject Matter Jurisdiction over Doe's Claims Against Governor Jindal

Defendants contend that Doe's official-capacity claims against Governor Jindal must be dismissed for lack of subject matter jurisdiction because the Eleventh Amendment immunizes Governor Jindal from suit.[21]  The Eleventh Amendment generally bars private citizens from suing a state in federal court. See U.S. Const. amend. XI; *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Hutto v. Finney*, 437 U.S. 678, 700 (1978)).  The Eleventh Amendment also bars private citizens from suing a state employee in his official capacity because an official-capacity claim against a state employee is equivalent to suing the state itself.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *K.P.*, 627 F.3d at 124.

But, as the Supreme Court has recognized, the *Ex parte Young* doctrine excepts from Eleventh Amendment immunity a plaintiff's action to enjoin a state official from enforcing an unconstitutional law.  *See K.P.*, 627 F.3d at 124 (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Will*, 491 U.S. at 71 n.10.  To satisfy the *Ex parte Young* exception, the plaintiff must show that the state official has "some connection with the enforcement of the act."  *Ex parte Young*, 209 U.S. at 157.  In *Okpalobi v. Foster*, a plurality of the Fifth Circuit

---

[21]     R. Doc. 11-1 at 5.

explained that, to determine whether a state official has "some connection" with enforcing the allegedly unconstitutional statute, a court should evaluate (1) the official's ability to enforce the statute according to his statutory or constitutional powers, and (2) the official's "demonstrated willingness" to enforce the statute. *See* 244 F.3d 405, 417 (5th Cir. 2001).

Here, Doe's complaint alleges that, according to the Louisiana Constitution, Governor Jindal "has a duty to faithfully support the constitution and laws of the state and . . . see that the laws are faithfully executed."[22]  The Governor also appoints the head of each department in Louisiana's executive branch, including the Secretary of the Department of Public Safety and Corrections, which "administers, implements and maintains the State Sex Offender and Child Predator Registry."[23]

To bolster his claims against Governor Jindal, Doe argues in his brief that the Governor demonstrated his willingness to enforce the challenged statutes in a 2012 press release, in which Governor Jindal made strong statements about out-of-state sex offenders.[24]  But "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566

---

[22]   R. Doc. 1 at 3 ¶ 5.

[23]   *Id.*

[24]   R. Doc. 15 at 7.

(S.D. Tex. 2011) (collecting cases).  Accordingly, the Court will not consider the new factual allegations Doe raises in his briefing.

Considering the allegations Doe properly presents in his complaint, the Court finds that Doe has failed to demonstrate that the *Ex parte Young* exception applies to his claims against Governor Jindal.  Allegations that a state official has merely carried out his constitutional duties do not satisfy *Ex parte Young*'s requirement that there be "some connection" between the state official and enforcement of the allegedly unconstitutional act.  *See Okpalobi*, 244 F.3d at 417; *Doe v. Jindal*, No. 11-3888, 2011 WL 3925042, at *5 (E.D. La. Sept. 7, 2011).  Accordingly, the Court dismisses Doe's claims against Governor Jindal.

**B.   Doe Fails to State a Claim that Defendants Violated His Constitutional Rights by Enforcing the Challenged Statutes**

1.   *Pleading a Civil Rights Claim under 42 U.S.C. § 1983*

Section 1983 imposes civil liability on "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizens of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."  42 U.S.C. § 1983.  To plead a section 1983 claim adequately, a plaintiff must allege that a state actor violated the plaintiff's constitutional right or a right otherwise protected by federal law.

14

*Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right secured by the Constitution and laws." *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Doe challenges Louisiana Revised Statute § 15:544(C) and § 15:542.1.3(B)(2)(c) as violative of his substantive due process rights, his right to equal protection, and his fundamental right to travel. Defendants argue that Louisiana's sex offender registry provisions are valid under each constitutional doctrine.

### 2.   *Substantive Due Process*

The Court first addresses Doe's substantive due process claim. The Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has interpreted the Due Process Clause to include both substantive and procedural components. *See Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997). Procedural due process guarantees that a state will not deprive a person of life, liberty, or property without undertaking certain procedures, including some form of notice and an opportunity to be heard. *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004). Substantive due process protects certain fundamental rights that are so "implicit in the concept of ordered liberty" from state infringement regardless

15

of any procedures that the state may use. *Glucksberg*, 521 U.S. at 720-21 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937)). State legislation that infringes on a fundamental right is subject to strict scrutiny and will be invalidated unless it "narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993). If no fundamental right is involved, the state statute need only be "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728 (citing *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319-20 (1993)).

As the Supreme Court explains, the fundamental rights that substantive due process protects include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Id.* at 720; *see also Doe v. Jindal*, No. 11-388, 2011 WL 3925042, at *9 (E.D. La. Sept. 7, 2011). The Supreme Court has "always been reluctant to expand the concept of substantive due process" to include additional rights or liberty interests "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Glucksberg*, 521 U.S. at 720 (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). Therefore, to plead a substantive due process claim properly, a plaintiff must first allege that he held a constitutionally protected right to which the Fourteenth Amendment's due

process protection applies.  *See SIMI Inv. Co., Inc. v. Harris Cty.*, 236 F.3d 240, 249-50 (5th Cir. 2000).

Here, Doe's substantive due process allegation reads in its entirety: "Each Defendant is the head of an agency, department, bureau, division, or subdivision thereof responsible for the administration of Louisiana's sex offender registry and has conspired to deny Mr. Doe his rights under the Equal Protection Clause of the 14th Amendment to the US Constitution and *the Statute denies Mr. Doe his substantive due process rights*."[25]  Beyond that, Doe fails to articulate which substantive due process rights he believes defendants to have infringed.  Though elsewhere Doe alleges that defendants violated his fundamental right to interstate travel, courts traditionally safeguard the right to travel under the Equal Protection Clause of the Fourteenth Amendment.  *See, e.g.*, *Saenz v. Roe*, 526 U.S. 489, 499 (1999) ("[A] classification that ha[s] the effect of imposing a penalty on the exercise of the right to travel violate[s] the Equal Protection Clause . . . ."); *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 902 n.2 (1986) (noting that "[i]t is clear from our cases [that] the right to travel achieves its most forceful expression in the context of equal protection analysis"); *Zobel v. Williams,* 457 U.S. 55, 60 n.6 (1982) ("In reality, right to travel analysis refers to little more than a particular application of equal protection analysis.").  Accordingly, the

---

[25]     R. Doc. 1 at 6 ¶ 14 (emphasis added).

Court addresses Doe's right to travel as an equal protection claim, and not as a substantive due process claim.

Doe must therefore allege some other fundamental right "implicit in our concept of ordered liberty" to sustain his substantive due process claim. *See Glucksberg*, 521 U.S. at 720-21 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937)). Because he does not, Doe's substantive due process allegation is nothing more than a bare, conclusory allegation that the Court need not accept as true on defendants' motions to dismiss. *See Varela v. Gonzales*, 773 F.3d 704, 710 (5th Cir. 2014) (holding that the court "need not accept such conclusory allegations as true").

Further, the absence of an allegation that the challenged statutes infringe on an already-established fundamental right is fatal to Doe's substantive due process claim. Because courts are "reluctant to expand the concept of substantive due process," *see Glucksberg*, 521 U.S. at 720, courts routinely reject substantive due process challenges to state or federal sex offender registry laws when the plaintiff fails to articulate a right that falls within the types of substantive due process rights the Supreme Court has already recognized. *See Doe v. Cuomo*, 755 F.3d 105, 114 (2d Cir. 2014) (New York's Sex Offender Registration Act does not implicate the fundamental right to privacy); *Does v. Munoz*, 507 F.3d 961, 964-65 (6th Cir. 2007) (plaintiffs have no fundamental right to privacy regarding expunged sex offense

18

convictions); *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007) (rejecting sex offenders' fundamental rights arguments based on right to privacy and interests in nondisclosure of private information); *Doe v. Moore*, 410 F.3d 1337, 1343-44 (11th Cir. 2005) (rejecting allegations that Florida's Sex Offender Act violated plaintiffs' "rights to family association, to be free of threats to their persons and members of their immediate families, to be free of interference with their religious practices, to find and/or keep any housing, and to a fundamental right to find and/or keep any employment"); *Doe v. Miller*, 405 F. 3d 700, 709-10 (8th Cir. 2005) (Iowa's sex offender residency restrictions do not implicate fundamental right to personal choice in family matters); *Doe v. Tandeske*, 361 F.3d 594, 596-97 (9th Cir. 2004) (sex offenders do not have a fundamental right to be free from state registration and notification requirements); *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003) (Minnesota's sex offender registry law does not implicate the fundamental right to the presumption of innocence); *Paul P. v. Verniero*, 170 F.3d 396, 404-05 (3d Cir. 1999) (effects of sex offender community notification on family relationships does not "fall within the penumbra of constitutional privacy protection"); *see also Doe v. Jindal*, No. 11-388, 2011 WL 3925042, at *10 (E.D. La. Sept. 7, 2011) (sex offender plaintiffs fail to state a substantive due process claim based on the right to privacy).  Because the challenged legislation is then subject to rational basis review, courts have

almost always upheld sex offender registry statutes as constitutional. *E.g.*, *Doe v. Cuomo*, 755 F.3d 105, 114 (2d Cir. 2014) (upholding New York's Sex Offender Registration Act under rational basis review); *Does v. Munoz*, 507 F.3d 961, 964-65 (6th Cir. 2007) (upholding Michigan's registration requirement for sex offenders with expunged convictions under rational basis review); *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007) (upholding Michigan's registration requirement for juvenile sex offenders under rational basis review); *Doe v. Moore*, 410 F.3d 1337, 1343-44 (11th Cir. 2005) (upholding Florida's Sex Offender Act under rational basis review); *Doe v. Miller*, 405 F. 3d 700, 709-10 (8th Cir. 2005) (upholding Iowa's sex offender residency restriction under rational basis review); *Doe v. Tandeske*, 361 F.3d 594, 596-97 (9th Cir. 2004) (upholding Alaska's sex offender registry law under rational basis review); *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003) (upholding Minnesota's sex offender registry law under rational basis review).

As the Court explains in its equal protection analysis in Part III.B.3, *infra*, Louisiana's lifetime sex offender registry provisions are rationally related to legitimate state interests and thus constitutional. "A rational basis that survives equal protection scrutiny also satisfies substantive due process." *Exec. Air. Taxi Corp. v. City of Bismarck, N.D.*, 518 F.3d 562, 569 (8th Cir. 2008) (citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456 n.12

(1981)).  Therefore,  Louisiana's statutes are constitutional under the substantive due process component of the Fourteenth Amendment.

### 3.   Equal Protection and the Fundamental Right to Travel

The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  As the Supreme Court explains, the Equal Protection Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."  *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (citations omitted).  Importantly, "[t]he Constitution does not require things which are different in fact . . . to be treated in law as though they were the same."  *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (quoting *Tigner v. Texas*, 310 U.S. 141, 147 (1940)).  Thus, to state an equal protection claim, the plaintiff must allege that he is "similarly situated" to other persons, that he has been treated differently from those similarly situated persons, and that the relationship between the differential treatment and the state's asserted goals cannot satisfy judicial review.  *See Gibson v. Tex. Dep't of Ins.–Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012); *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999).

Most courts hold that persons are "similarly situated" for purposes of an equal protection analysis "when they are alike in all relevant aspects."  *E.g., Castaneira v. Potteiger*, ___ F. App'x ___, 2015 WL 4385694, at *4 (3d Cir.

21

2015); *accord Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) ("To be considered 'similarly situated,' comparators must be *prima facie* identical in all relevant respects or directly comparable to [plaintiff] in all material respects.").  In the context of a class-of-one equal protection claim, however, the Fifth Circuit has cautioned that the "similarly situated" inquiry is case-specific and that courts must consider "the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision."  *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233-34 (5th Cir. 2012) (citation omitted).

Here, Doe's allegations are flawed at their outset.  In his complaint, Doe alleges that, as a person convicted of an Alabama sex offense and sentenced to a lifetime term of sex offender registration by an Alabama court, he is similarly situated to persons convicted of Louisiana sex offenses and sentenced to a term of registration by a Louisiana court.  Doe is materially unlike, and therefore not similarly situated to, Louisiana offenders because he was convicted and sentenced of an Alabama offense, which carries penalties different from a Louisiana offense.  *See Castaneira v. Potteiger*, No. 3:13cv3108, 2014 WL 4716621, at *6 (M.D. Pa. Sept. 22, 2014), *aff'd*, ___ F. App'x ___, 2015 WL 4385694 (3d Cir. 2015) ("Plaintiff is not similarly situated to offenders convicted of similar crimes in Pennslyvania [because he] was arrested, charged and convicted in Georgia.")*; Creekmore* v. *Attorney Gen. of*

*Tex.*, 341 F. Supp. 2d 648, 663 (E.D. Tex. 2004) ("[Plaintiff] is not similarly situated to individuals convicted under the Texas Penal Code . . . . [Plaintiff] is similarly situated to individuals convicted of a sex offense in a jurisdiction other than Texas."); *Oulman v. Setter*, No. A13-2389, 2014 WL 3801870, at *3-4 (Minn. Ct. App. 2014) ("[I]ndividuals may be classified as dissimilarly situated based on location. . . . [Plaintiff] belongs to that class of persons who commit crimes in violation of another state's laws, who are subject to registration requirements of that state, and who relocate to Minnesota."). Importantly, Doe admits that an Alabama state court initially imposed the lifetime registration requirement as part of his sentence.[26] *See Castaneira v. Potteiger*, 2014 WL 4716621, at *6 ("[P]laintiff is not similarly situated to Pennslyvania offenders because Georgia, not Pennsylvania, imposed the special condition."). Because Alabama, and not Louisiana, has the specific, penological interest in imposing a lifetime registration requirement on Alabama offenders, such as Doe, Doe is different in fact from Louisiana offenders. Therefore, Louisiana need not treat Doe or other offenders with out-of-state convictions the same under the law. *See Plyler v. Doe*, 457 U.S. 202, 216 (1982). "Different treatment of [persons] who are not similarly situated does not offend equal protection." *Apache Bend Apartments, Ltd. v.*

---

[26]     *Id.*

*United States ex rel. IRS*, 987 F.2d 1174, 1182 (5th Cir. 1993) (Goldberg, J., dissenting).

Even if the Court considered an offender convicted in another state to be similarly situated to an offender convicted in Louisiana, Doe's equal protection claim would still fail as a matter of law. To start, Doe argues that, because this differential treatment infringes on the fundamental right to travel, the Louisiana sex offender registry provisions must be strictly scrutinized.

The "freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 901 (1986) (citations omitted). The constitutional "right to travel" includes three components: (1) "the right of a citizen of one State to enter and to leave another State," (2) the "right to be treated as a welcome visitor rather than unfriendly alien when temporarily in the second State," and (3) for those who elect to become permanent residents of another state, "the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). In other words, people should generally "be free to travel throughout the length and breadth of our land inhibited by statutes, rules, or regulations which *unreasonably burden or restrict* this movement." *Id.* at 499 (emphasis) (quoting Shapiro *v. Thompson*, 394 U.S. 618, 629 (1969)). "However, *mere burdens* on a person's ability to travel from state to state are not necessarily a violation of the[] right to travel."

*Doe v. Moore*, 410 F.3d 1337, 1348 (11th Cir. 2005) (emphasis added) (citing *Saenz v. Roe*, 526 U.S. 489, 599 (1999)); *see also United States v. Byrd*, 419 F. App'x 485, 491 (5th Cir. 2011) (emphasizing that courts should apply strict scrutiny only to statutes that "unreasonably burden" the right to travel); *United States v. Shenandoah*, 595 F.3d 151, 163 (3d Cir. 2010) ("[I]t is worth noting that the [c]onstitutional right of interstate travel is not an absolute right . . . .").

Here, Doe contends that defendants have burdened the third component of the right to travel, *i.e.*, the right to be treated like other citizens of Louisiana. Doe argues that "[b]y treating individuals required to register on the state sex offender registry differently if they move to Louisiana after their conviction that they would be treated if they were living in Louisiana at the time of their conviction, the State of Louisiana denies those individuals . . . the fundamental right to travel." Doe's argument rests on a fundamental misunderstanding of the applicable Louisiana law.

Again, the relevant portions of Louisiana's sex offender registry laws are as follows. Louisiana Revised Statute § 15:542.1.3 explains that "[a]ny person who is convicted or adjudicated of an offense under the laws of another state, or military, territorial, foreign, tribal, or federal law [that] requires registration shall be subject to and shall comply with all of the registration requirements of this Chapter . . . ." *See* La. Rev. Stat. § 15:542.1.3(A). This provision does not

limit its applicability to persons born outside of Louisiana or to persons who lived in another state at the time of their conviction. *See Nolan v. State*, 148 So.3d 198, 203 (La. App. 1 Cir.), *cert. denied*, (La. 2014) ("The applicable Louisiana statute at issue, La. R.S. 15:542.1.3(A), specifically addresses procedures for the registration of sex offenders who have *residences in Louisiana* but who have been *convicted under the laws of another state*.") This is also clear because the law explicitly covers persons convicted of "military, territorial, foreign, tribal, or federal law" crimes. Louisiana's registry provisions plainly apply to "*any person* . . . convicted or adjudicated of an offense under the laws of another state [or other sovereign]" without regard to the person's state of residency at the time of his conviction. *See* La. Rev. Stat. § 15:542.1.3(A) (emphasis added).

Louisiana Revised Statute § 15:544 is the general provision governing the duration of a sex offender's registration and notification period. Regarding those offenders who have been "convicted or adjudicated of an offense under the laws of another state, or military, territorial, foreign, tribal, or federal law," subsection 544(C) provides that a person who is required to register as a sex offender under the laws of another jurisdiction "shall register . . . for the period of registration provided by the jurisdiction of conviction or for the period of registration provided by the provisions of [Louisiana's registry laws], whichever period is longer." La. Rev. Stat. § 15:544(C). Even though

subsection 544(C) necessarily compels this result, subsection 542.1.3(B)(2)(C) explicitly provides that "if the period of registration required by the offender's jurisdiction of conviction is for the duration of the offender's lifetime . . . [t]he duration of the registration for any such offender shall be for the duration of his lifetime . . . ."  La. Rev. Stat. 542.1.3(B)(2)(C).  This subsection also provides that "if the period of registration required by the offender's jurisdiction of conviction is for the duration of the offender's lifetime . . . the frequency of in-person periodic renewals for the offender shall be every three months from the date of initial registration . . . ."  La. Rev. Stat. 542.1.3(B)(2)(C).

Initially, the Court finds that these provisions do not facially restrict, in any way, a sex offender's movement into or out of the state of Louisiana.  *See United States v. Byrd*, 419 F. App'x 435, 492 (5th Cir. 2011) (rejecting plaintiff's right to travel challenge because "nothing in SORNA places *any* restriction on [defendant's] movement from state to state").  The provisions merely require that if a person residing in Louisiana has at any time been ordered to register as a sex offender by a jurisdiction other than Louisiana, then that person must also register as a sex offender under Louisiana law.  *See United States v. Shenandoah*, 595 F.3d 151, 162 (3d Cir. 2010) ("[Defendant] may travel interstate, but when he does, [he] must register in the new state,

while a convicted sex offender who remains within a state need only remain properly registered therein.").

That Louisiana also requires the offender to register for whichever jurisdiction's applicable registration period is longer does not offend the right to travel. Doe interprets his fundamental right to travel as allowing a sex offender easily to escape the registration requirement imposed by his jurisdiction of conviction by moving to a state which would have imposed a more lenient registration condition if it had originally prosecuted the offender. The Constitution does not require this result. What the constitutional right to travel does require—"the right to be treated like other citizens of that State"—Louisiana's lifetime sex offender registry provisions already achieve. *See Saenz v. Roe*, 526 U.S. 489, 500 (1999). The challenged statutes treat an out-of-state resident with an out-of-state conviction and a lifelong Louisiana resident with an out-of-state conviction the same way. Accordingly, the Court concludes that Louisiana's lifetime registration provisions do not unreasonably burden the right to travel.

Because the challenged statutes do not unreasonably burden the fundamental right to travel and Doe has not suggested that they implicate any other fundamental right, the Court need only review the statutes' constitutionality under the rational basis standard. Rational basis review requires the Court to find that the challenged statutes are "rationally related

28

to legitimate government interests." *Glucksberg*, 521 U.S. at 728 (citing *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319-20 (1993)).  As the Supreme Court has explained,

> rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. . . . [A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot fun afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purposes. Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319-20 (1993) (citations omitted).  In sum, the rational basis standard is highly deferential.  The Court will not overturn government action unless it "is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Kimel v. Fla. Brd. of Regents*, 528 U.S. 62, 84 (2000) (citing *Vance v. Bradley*, 440 U.S. 93, 97 (1979)); *see also Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007) (explaining that courts invalidate statutes as unconstitutional under rational basis review "only in rare or exceptional circumstances").

Here, the Court concludes that there are at least two justifications for Louisiana's imposing the longer period of registration and the in-person

periodic renewals that satisfy rational basis review.  First, Louisiana Revised Statute 15:544(C)'s "whichever period is longer" provision reflects a public policy determination that, to promote public safety and discourage recidivism, individuals convicted of sex offenses must register on the State Sex Offender and Child Predator Registry for *at least* the period of registration that a Louisiana court would have imposed under Louisiana law.  *See* La. Rev. Stat. § 15:540 (explaining Louisiana's interest in protecting the public from sex offenders, sexually violent predators, and child predators).  But if the offender's jurisdiction of conviction has determined that a longer period of registration is necessary for deterrence, safety, or other reasons, Louisiana will recognize that jurisdiction's penological interest and will not permit an offender to circumvent it by leaving his state of conviction for a more lenient jurisdiction.  Applying the longer period of registration simultaneously satisfies the penological interests of Louisiana, the jurisdiction in which the offender resides, and the jurisdiction in which the offender was convicted. This reasoning also applies to Louisiana Revised Statute 15:542.1.3(B)(2)(c), which imposes a lifetime registration requirement in Louisiana on an offender subject to a lifetime registration requirement by another jurisdiction.

Second, defendants explain that Louisiana Revised Statute § 15:544(C) and § 15:542.1.3(B)(2)(c) are an effort to adopt a "more unified" sex offender

registry system.[27]  As the Supreme Court recently has recognized, the existing "patchwork of federal and 50 individual state registration systems" is plagued with "loopholes and deficiencies."  *United States v. Kebodeaux*, 133 S. Ct. 2496, 2505 (2013).  Louisiana's requirements of "whichever [registration] period is longer" and, for offenders subject to lifetime registration, in-person periodic renewals every three months are rationally related to Louisiana's interest in preventing sex offenders from subverting the purposes of their court-ordered registration requirements.

In sum, Louisiana's statutes are constitutional under the Equal Protection Clause of the Fourteenth Amendment.

### 4.   *Summary*

Louisiana Revised Statute § 15:544(C) and § 15:542.1.3(B)(2)(c) are constitutional under both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.  Consequently, no defendant has deprived Doe of a constitutional right by applying these statutes to him. Therefore, Doe cannot satisfy the threshold requirement of stating a claim under section 1983, *see Baker v. McCollan*, 443 U.S. 137, 140 (1979), and his complaint must be dismissed as a matter of law.

---

[27]     R. Doc. 11-1 at 24.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the state defendants' and defendant Michael Harrison's Motions to Dismiss.   Doe's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this ___18th___ day of November, 2015.

_____*Sarah Vance*_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE